(C.D. 2738)

GEMATEX CORP. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided July 27, 1966)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* and *Thomas Brian Ketchum* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Richard J. Kaplan* and *Harvey A. Isaacs,* trial attorneys), for the defendant.

DONLON, Judge: The issue here litigated is whether sun dials, imported from Sweden, are provided for in paragraph 368 as time-keeping, time-measuring, or time-indicating mechanisms, devices or instruments. It is plaintiff's claim that these sun dials are not within the paragraph 368 enumeration, but are articles or wares that are not provided for, wholly or in chief value of such metals as entitle the sun dials to classification at the duty rate of 19 percent ad valorem under paragraph 397.

The competing paragraphs, as modified, are in relevant part as follows:

Paragraph 368, as modified, T.D. 52739:

Clocks, clock movements, * * * time-keeping, time-measuring, or time-indicating mechanisms, devices, and instruments, and any mechanism, device, or instrument intended or suitable for measuring or indicating time * * *:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

Valued over $5 but not over $10 each_____ $1.50 each and 32½% ad val.

Paragraph 397, as modified, T.D. 54108:

Articles or wares not specially provided for, whether partly or wholly manufactured:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

Not wholly or in chief value of tin or tin plate:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum * * *_____ 19% ad val.

The official papers are not in evidence. There are no proofs as to value. However, plaintiff does not controvert the finding of the collector, basic to his classification, that the value of these sun dials is more than $5 each, but not over $10. The collector's finding in liquidation as to value, not being controverted, is presumed correct.

The record includes testimony of Mrs. Margot Sandler, president of plaintiff, Gematex Corp.; certain exhibits that were introduced into evidence by plaintiff; and a stipulation as to certain facts. The stipulation is dispositive of the issue, implicit in the claimed classification under modified paragraph 397, as to the component material of chief

value of these sun dials. It is stipulated that the merchandise at bar is in chief value of one or more of the materials enumerated in paragraph 397, namely:

* * * iron, steel, brass, bronze, zinc or aluminum, and that said merchandise is not plated with platinum, gold, silver or tin and is not colored with gold lacquer.

Mrs. Margot Sandler testified that, as president, she does the buying for plaintiff; "following them up in the office, the dealings with the Customs and everything which had to do with the importing of the merchandise." (R. 3.) She also directs personnel and takes "care of all matters" (R. 3), but she does not sell. She attends trade shows for "a couple of days; otherwise the sales personnel attends to it." (R. 4.)

Mrs. Sandler is familiar with the sun dials at bar, for she ordered them from the Swedish manufacturer. She identified the Gematex catalog of giftware which is in evidence. (Exhibit 1.) More particularly, she identified an illustration of the sun dials at bar which appears on page 35 of that catalog. This, she testified, is a correct illustration of the sun dials here in issue.

Mrs. Sandler also identified exhibit 2 as exactly and correctly illustrative of the globe which is part of these sun dials. The globe is identical in all three of the different sun dials. It is the base of the sun dial only that differs. Exhibit 2, however, does not contain the "point on the arrow" (R. 6) which is part of the sun dial, as illustrated in exhibit 1.

Mrs. Sandler said that she had seen these sun dials in gift shops of plaintiff's customers. Sometimes the shops place a sun dial outside their main windows "as an eye catch." (R. 7.) She did not respond directly to the question, put to her by plaintiff's counsel, as to whether she herself had ever seen these sun dials used in homes or outside of homes. Her somewhat evasive reply was that "[S]ome people use them in their homes, and some people use them outside, in their garden, as an ornament," but she did not say whether her statement as to use was based on personal observation, the inquiry that plaintiff's counsel made of her. Where, and how often, and when, if ever, she had seen these sun dials used as described, she did not say. She testified merely that "we used one in our garden when we had a house." She used it for ornamental, or decorative, purposes. She considers the sun dial to be an ornamental item which plaintiff sells "to the gift trade, gift shops." (R. 7.) She has never seen sun dials used to measure time, saying "it is not accurate enough for that." (R. 8.)

Mrs. Sandler testified also that plaintiff "printed" an instruction sheet, which is in evidence as exhibit 3. She and "the salesmen" wrote these instructions.

Mrs. Sandler said, what of course is obvious, that a sun dial can not be used to measure or indicate time at night or when the sun is not shining.

That these are sun dials is conceded. Plaintiff's contention is that, although sun dials, they are not such mechanisms, devices or instruments as paragraph 368 enumerates.

We have, as a precedent that is cited by counsel both for plaintiff and defendant, the decision as to sun dials in *Black, Starr & Gorham* v. *United States*, 44 Cust. Ct. 118, C.D. 2163. Judge Lawrence, writing for the unanimous Second Division in that case, found the sun dials there at bar to be devices which measure time and, hence, classifiable as such under paragraph 368. We have examined the record in that case. No testimony was adduced. There are no exhibits. All that there is, by way of record, is a stipulation of counsel that the two items of merchandise at bar were invoiced as sun dials, brass and marble, made in France, and that the items of merchandise "consist of sun dials."

The shoe there was on the other foot. It was the Government's contention in *Black, Starr & Gorham*, stated in its brief, that the "imported sun dials are not mechanisms, devices or instruments for measuring time in a tariff sense. The most they can give is a rough idea of the time of day. There is no proof in the record of any measurement of hours, minutes, or seconds, and this, it is submitted, is what must be present in some way in order that said sun dials should be classified as a mechanism, device, or instrument for measuring time."

The court brushed aside these arguments, as well as what it called defendant's attempt to exclude sun dials from paragraph 368 enumeration by invoking the rule of *noscitur a sociis* or *ejusdem generis*. Observing that the meaning of paragraph 368 is clear and free from ambiguity, citing dictionary definitions and encyclopedic statements about sun dials, and relying also on common knowledge, the court held that sun dials "are, in fact and in law, within the statutory provision for devices or instruments intended or suitable for measuring time in paragraph 368 * * *." (Pp. 120, 121.)

We accept the precedent of *Black, Starr & Gorham, supra*, and the reasoning stated in that opinion.

Plaintiff, however, seeks to distinguish the sun dials here at bar from those litigated in *Black, Starr & Gorham*, in that those now before us do not have an angle scale which permits their adjustment for accurate or fairly accurate time measurement, and that they are sold for ornamental or decorative purposes, rather than for time measurement.

This line of argument is somewhat confounded by certain facts in the record. There are numbers and an arrow for casting the shadow which is the time indicator of a sun dial. Plaintiff's exhibit 3 was

written, according to the testimony of plaintiff's president, as instructions for installation of these sun dials. Exhibit 3 is entitled "Installation Instructions." The instructions for installation are relevant, and warrant our reciting them:

INSTRUCTIONS FOR INSTALLATION:

By observing the following easy instructions you will be able to count the happy hours when the sun is shining:

Unpack sun dial from carton. You will find four separate component parts.

Take out the base "figure of Atlas" and remove the four screws which hold the top to the base.

Take the part consisting of three rings and swing the wide band with the numbers until it is at a right angle, 90°, with the heavy outer ring.

Take the narrow band going around the wide numbered circle and swing it until the holes are in line with the holes of the heavy outer ring.

Push the long part of brass arrow through bottom holes and up through the corresponding holes on opposite side, so that the arrow forms a diameter of the circle.

Screw on point of arrow.

Set the completed globe into groove on top of "Atlas figure" base in such a manner that the angle of arrow corresponds with the latitude of your home town.

Determine your latitude by using the chart.

Tightly screw on cover of base.

The sun dial should be placed on a solid, level base such as a tree stump, concrete post or the like, in a place where the sun can reach it all day long. The surface upon which it is placed must be horizontal. Attach sun dial to the base with a heavy bolt or screw. Turn until the time shown by the shadow or rod corresponds with the time of installation. Then tighten the bolt so that the sun dial will remain in a fixed position. The installation is now completed.

The "latitude of your home town" is said to be ascertainable from the *chart* which is a part of exhibit 3. This chart traces, on a map of continental United States (except Alaska), five different zones of latitude, from 50° to 25°. By following the "Installation Instructions," called "easy instructions," purchasers of the sun dials at bar are told "you will be able to count the happy hours when the sun is shining." That is to say, these sun dials are represented by plaintiff to be devices which indicate time *when the sun is shining*. This was the rationale of the prior decision in *Black, Starr & Gorham, supra.*

"Gnomonics," as to which installers of the sun dials at bar were invited to consult works in their Public Library, is the art or science

of dialing or of constructing dials. The word derives from "gnomon," which is defined as any "object which by the position or length of its shadow serves as an indicator, esp. of the hour of the day * * *." (Webster's New International Dictionary, 2d edition, 1956.)

While these sun dials do not have a plate, that is not essential to a sun dial. The definition of sun dial in Webster's New International Dictionary, 2d edition, *supra*, is as follows:

An instrument to show the time of day by the shadow of a gnomon, or style, on a plate (usually horizontal), *or on a cylindrical surface.* [Emphasis added.]

The sun dial at bar is described in exhibit 3 as a sun dial "Armillary Sphere Type." Armillary sphere was an ancient astronomical instrument, spherical in shape. Whether or not the sun dials at bar are of that type, we need not decide. They have cut-out cylindrical surfaces.

Plaintiff's exhibit 3 recites:

Sun dials were used since ancient times and were the only means *to tell the time* until the invention of the clock. This sun dial is an authentic replica of a many centuries old Scandinavian sun clock and the art of making them has been carefully handed down from father to son. [Emphasis added.]

As pointed out in defendant's brief, the shape of the sun dials at bar is traditional. In *The Encyclopedia Americana* (1953 edition), volume 26, at page 28, we read:

* * * An old Roman dial is in the form of a spherical shell of which about two-thirds have been cut away, held upon the shoulders of a herculean figure. Cylindrical dials have the hollow in the shape of a semi-cylinder cut through lengthwise. A rod in the position of the axis of the cylinder throws the shadow. * * *

We think it not persuasive of classification that these sun dials are sold in gift shops, or that some people somewhere do not install them properly in the instructed manner, and thus find themselves regrettably unable "to count the happy hours."

We turn now to two other cases which plaintiff cites in its brief. *United States* v. *United Geophysical Co.*, 38 CCPA 137, C.A.D. 451, and *Kahlen* v. *United States*, 2 Ct. Cust. Appls. 206, T.D. 31947. The former has to do with classification of radar equipment. Competition there was between tariff provisions for mechanisms, devices, or instruments intended or suitable for measuring distance (paragraph 368 (a)), and for articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy (paragraph 353). Our appeals court, analyzing the record, held that "the primary function of the subject device (*i.e.*, radar) is to *detect* objects, rather than to

*measure distances"* (*supra*, p. 142; emphasis copied). Although it recognized the importance of the latter function, the court expressed its view to be that the errors to which the radar was susceptible in measuring distances, admitted in the stipulation of facts that constituted the sole record in the case, precluded classification under paragraph 368(a).

There is no comparable admission here. While plaintiff's president testified that sun dials are not accurate time keepers, the language of paragraph 368 is not similar for time mechanisms as for distance mechanisms. The latter are to measure distance; it suffices if the former *indicate* time.

As to the early (1911) case of *Kahlen, supra*, the decision of our appeals court turned on the well established principle that, in tariff law, "suitable" means actually, practically and commercially fit. Hence, proofs that onion skin paper was rarely, and only exceptionally, used for printing purposes did not make it printing paper for classification under that enumeration.

We see nothing in either *United Geophysical Co.*, or *Kahlen*, or in the record before us, that calls for us to overrule the holding in *Black, Starr & Gorham, supra*. It is *stare decisis*.

The protest is overruled. Judgment will be entered accordingly.